IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | |
|---|---|
| WALTER Z. SPELLER, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>HAROLD CLARKE, )<br>)<br>Respondent. ) | Civil Action No. 3:11cv829–HEH |

## <u>MEMORANDUM OPINION</u>
**(Granting Respondent's Motion to Dismiss)**

Walter Z. Speller, a Virginia inmate proceeding *pro se*, filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254 ("§ 2254 Petition"). Speller contends that he failed to receive the effective assistance of counsel. Specifically, Speller asserts:

| | |
|---|---|
| Claim One | "[C]ounsel encouraged and permitted petitioner to plead guilty under coercion by the trial judge and his family." (§ 2254 Pet. 4.) |
| Claim Two | "[C]ounsel failed to object to and move to withdraw petitioner's plea on the ground that the trial judge's comment[1] was prejudicial and violated Rule 3A:8 of the Supreme Court of Virginia." (*Id.* at 5.) |

Respondent has moved to dismiss on the ground that Speller's claims lack merit. Speller has responded. The matter is ripe for judgment.

---

[1] Speller challenges the following comment by the trial judge, "'You'll fare better by the plea agreement than what the jury is <u>likely</u> to determine when they make their decision.'" (Mem. Supp. § 2254 Pet. 6–7.) The Circuit Court made this comment after Speller agreed to plead guilty, but before the Circuit Court had accepted Speller's plea. (Trial Tr. 240–44.)

## I. APPLICABLE CONSTRAINTS UPON FEDERAL HABEAS REVEW

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).[2]

## II. PROCEDURAL HISTORY

### A. Trial and Sentencing

A grand jury in the Circuit Court for the City of Norfolk ("Circuit Court") charged Speller with two counts of aggravated malicious wounding in conjunction with his severe

---

[2] In light of the foregoing statutory structure, the Circuit Court's findings on Speller's state habeas petition figure prominently in this Court's opinion.

2

abuse of two children, infant O and a three-year old girl L.[3] On the first day of trial, E.C. testified that she along with her daughter L and son O lived with Speller from May of 2007 until August of 2008.

E.C. testified that on July 17, 2008, she was trying to feed her seven-month old son O baby cereal. E.C. had difficulty feeding O because O was not feeling well and Speller demanded to take over the feeding. E.C. testified that:

> But Walter still insisted to feed him, and my son was crying because he did didn't want it. Walter started shoving the spoon in his mouth to make him eat it, but he started crying even more, and then Walter got upset because he said he was acting like a little girl, acting like a bitch . . . .
> . . . .
> [Speller] grabbed [O] by his arm. He pulled him out [sic] the car seat and he started smacking him in the back of his head. He hit him about two times, and then he threw him on the bed. [O] was still crying and he picked him up again, and he started hitting him again another two times.

(Trial Tr. 76–77.) The infant stopped crying, began vomiting and then became stiff.

According to E.C., she wanted to take O to the hospital, but Speller was worried what the doctors would think of the bite mark on O's face. Speller had bitten O a few days earlier. E.C. told him she would tell the doctors L had bitten O. Speller then took E.C., O, and L to the hospital and left them there.

E.C. testified that Speller also had repeatedly beaten L. E.C. testified that about two weeks before the trip to the hospital, Speller repeatedly slapped L in face for peeing on herself. Additionally, Speller had L strip naked and beat her on her back, stomach, and thighs with a belt.

---

[3] Speller was the father of O and another son who was born to E.C. after the incident that gave rise to the criminal charges.

3

At the hospital, photographs documenting the injuries to O, L, and E.C. were taken. The photos corroborated E.C.'s testimony about the beatings she, O, and L had received at the hands of the Speller.

Dr. Starling examined O, L, and E.C. at the hospital on July 17, 2008. Dr. Starling testified that O had "an extensive amount of bleeding ... around his brain." (*Id.* at 199.) Dr. Starling further testified that O would have permanent brain damage. Dr. Starling concluded that severe shaking most likely caused O's injuries. Dr. Starling further testified L "was significantly injured from the top of her head down to her feet. She had bruises on almost every surface of her body ...." (*Id.* at 208.) Dr. Starling testified that the photos of L's injuries, although accurate, did not fully portray the extent of her injuries. Dr. Starling explained that L had brain injuries similar to O's, but L's injuries were older.

At the close of the prosecution's case, the Circuit Court asked defense counsel whether he would be presenting any evidence. Defense counsel responded, "Don't know. If I do it will be one witness and that will be the defendant." (*Id.* at 226.) Defense counsel explained that Speller would either accept the prosecution's plea offer or take his chances with the jury. Speller asked the Circuit Court to let him think about his options overnight. The Circuit Court agreed.

When Speller came back the next morning, he pled guilty to both counts of aggravated malicious wounding. Speller assured the Circuit Court that it was his "free

4

and independent decision, to change [his] pleas from not guilty to guilty." (Trial Tr. 240.) Thereafter, the Circuit Court accepted Speller's pleas of guilty.

Prior to sentencing, Speller moved to withdraw his guilty pleas. The Circuit Court denied the motion. The Circuit Court sentenced Speller to an active term of imprisonment of twenty-one years.

### B. Post-Trial Proceedings

Speller unsuccessfully appealed his convictions and sentences. Those proceedings, however, are not relevant to resolution of his § 2254 Petition.

On March 3, 2011, Speller filed a petition for a writ of habeas corpus with the Circuit Court, wherein he raised, *inter alia*, his present Claims One and Two. In a thorough order entered on April 26, 2011, the Circuit Court denied Speller's state habeas petition. *Speller v. Clarke, Dir., Dep't Corr.*, No. CL11001822-00, at 20 (Va. Cir. Ct. Apr. 26, 2011) ("*State Habeas Op.*"). The Circuit Court found that Claim One "is without merit and is refuted by trial counsel's affidavit, which this court credits, and the trial record." *State Habeas Op.* 8. The Circuit Court stated:

> Contrary to the petitioner's representation in his petition that he had witnesses present at trial and ready to testify and counsel failed to call them on his behalf, counsel states in his affidavit that there was no evidence to present to the jury on behalf of the petitioner after petitioner exercised his right not to testify.
>
> . . . .
>
> Moreover, after the court overruled the defendant's motion to strike the Commonwealth's evidence and counsel indicated the petitioner might testify or that he might enter into a plea agreement with the Commonwealth, a lengthy exchange occurred, during which the petitioner asked the court if it could recess until the next day and give him an opportunity to decide whether to take the plea. When the court stated that petitioner did not sound inclined to enter a guilty plea since he was

maintaining his innocence, petitioner stated: "I am asking you can you please grant me a 24-hour recess? Either I am going to come and plead guilty or *I am going to testify*." At no time did the petitioner represent to the court that he had other witnesses available that were going to testify on his behalf. Counsel's affidavit and the record also establish counsel did not unduly pressure or coerce petitioner into entering his guilty plea. Counsel states in his affidavit, which this court credits, that after hearing the Commonwealth's evidence, and taking into consideration petitioner's prior conviction for felony child abuse, counsel advised the petitioner that unless he was willing to testify, there was no defense to offer and petitioner could receive 50 years' imprisonment. Counsel states that he told petitioner he would try to reach a plea agreement with the Commonwealth, and in fact did reach one whereby petitioner would not serve more than 21 years in prison. Counsel states that after petitioner consulted with him and with his family, petitioner agreed to plead guilty and accept the Commonwealth's offer.

Even if counsel encouraged petitioner to enter the plea agreement, such counseling does not mean that counsel exercised undue coercion or influence over the petitioner, resulting in an involuntary guilty plea. *See St. Clair v. Cox*, 312 F. Supp. 168, 170 (W.D. Va. 1970) ("The fact that petitioner enters a plea of guilty on the considered advice of counsel does not make such plea involuntary.") (citing *Schnautz v. Beto*, 416 F.2d 214 (5th Cir. 1969)[)]. *See also Stokes v. Slayton*, 340 F. Supp. 190, 192 (W.D. Va. 1972), *aff'd*, 473 F.2d 906 (4th Cir. 1973).

Moreover, the record reflects the petitioner alone made the decision to plead guilty as evidenced by the following exchange between the trial court and the petitioner, who was under oath:

> The Court: I know that this is not something - a decision that you've come to easily. Nonetheless, it's my obligation to satisfy myself that you are, in fact, making this decision freely, that you've not been coerced, you haven't been threatened in any way. So after all the soul searching and agonizing and discussions with your lawyer and discussions with your family, et cetera, *is it your decision, your free and independent decision*, to change your pleas from not guilty to guilty?
> The Defendant: Yes, ma'am.

Thereafter, an exchange occurred between the petitioner's mother and the court. The Court then asked the petitioner the following:

> The Court: This is your final chance to either say you want to testify or let the jury decide or you -
> The Defendant: I believe it's in my best interest to take this plea agreement.

6

> Petitioner is bound by his statements to the trial court as he has not given a valid reason why he should be permitted to controvert his statements to the trial court made under oath representing that it was his free and independent decision to enter his guilty pleas. *Anderson* [*v. Warden, Powhatan Corr. Ctr.*, 222 Va. 511, 516, 281 S.E.2d 885, 888 (1981)].
>
> Further, to the extent the petitioner alleges counsel's conduct caused petitioner's family to coerce him into pleading guilty, thereby rendering his plea involuntary, not only does the court find counsel's conduct was not deficient, but in addition, any entreatments by petitioner's family members for him to plead guilty did not render his guilty pleas involuntary. *St. Clair*, 312 F. Supp. at 170 (citing *Denson v. Peyton*, 299 F. Supp. 759 (W.D. Va. 1969); *United States ex rel. Piracci v. Follette*, 284 F. Supp. 267 (S.D.N.Y. 1968).
>
> To the extent petitioner alleges trial counsel's conduct led to the trial court coercing petitioner into entering a guilty plea, nothing in the record supports this allegation.
>
> In addition to the court's finding that petitioner has failed to prove deficient performance, the court finds the petitioner has not alleged or proven how he was prejudiced as a result of counsel's alleged deficiencies because he has failed to allege and demonstrate that, but for counsel's alleged deficiencies, there is a reasonable probability that he would have pleaded not guilty and insisted on concluding his jury trial. *Hill* [*v. Lockhart*, 474 U.S. 52, 59 (1985)]. Indeed, at the time petitioner accepted the Commonwealth's offer capping his active sentence to 21 years' imprisonment and entered his guilty plea, the petitioner was facing the possibility of two life sentences. Accordingly, the evidence and circumstances facing petitioner at the time he entered his pleas of guilty counsel against accepting his current claim that counsel coerced him into pleading guilty and but for that he would have elected to have the jury decide his fate. *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988).

*Id.* at 8–14.

With respect to Claim Two, the Circuit Court stated, in pertinent part,

> Contrary to petitioner's allegation, this court did not participate in the discussions leading to the plea agreement in contravention to Rule 3A:8. The terms of the plea agreement had been made prior to the trial court's comment that petitioner would "fare better" under the terms of the plea agreement than what the jury would likely determine, which the trial court said in response to petitioner's mother stating that she was hurt by the proceedings. Indeed, nothing in the record substantiates petitioner's claim

7

> that the court was involved in the negotiations or discussions of the terms of the plea agreement. Counsel was not ineffective for failing to object to the remark and move for withdrawal of the guilty pleas on the "ground[s] that the judge's comment was prejudicial and in violation of Rule 3A:8." (Pet. at 13). Counsel is not ineffective for failing to make a futile objection.

*Id.* at 15 (alteration in original) (citing cases).

Speller appealed. The Supreme Court of Virginia refused Speller's petition for an appeal. *Speller v. Clarke, Dir., Dep't Corr.*, No. 111278, at 1 (Va. Sept. 30, 2011).

### III. ALLEGED INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate the ineffective assistance of counsel, a defendant must show first, that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance facet of *Strickland*, the defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

In the context of a guilty plea, the Supreme Court modified the second prong of Strickland to require a showing that "there is a reasonable probability that, but for

8

counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Speller's assertion that he would not have pled guilty if he had received better assistance from counsel is not dispositive of the issue of prejudice. *See United States v. Mora-Gomez*, 875 F. Supp. 1208, 1214 (E.D. Va. 1995). Rather, "[t]his is an objective inquiry and [highly] dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007) (internal citation omitted) (citing *Hill*, 474 U.S. at 59–60). The Court looks to all the facts and circumstances surrounding a petitioner's plea, including the likelihood of conviction and any potential sentencing benefit to pleading guilty. *Id.* at 369–70. In conducting this inquiry, the representations of the defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). Thus, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992).

### A. Claim One

In Claim One, Speller complains that "counsel encouraged and permitted petitioner to plead guilty under coercion by the trial judge and his family." (§ 2254 Pet. 4.) The Circuit Court found that Speller failed to demonstrate either deficiency or prejudice. *State Habeas Op.* 14. Such a disposition of Claim One is eminently reasonable. *See* 28 U.S.C. § 2254(d). First, Speller fails to demonstrate that counsel

9

acted deficiently by encouraging Speller to plead guilty. The evidence of Speller's guilt was convincing. Speller has yet to identify a viable defense to the charges. By pleading guilty, Speller significantly reduced his sentencing exposure from the very real likelihood of two life terms of imprisonment to twenty-one years of imprisonment.[4] Thus, Speller fails to demonstrate that counsel acted in a constitutionally deficient manner in conjunction with his guilty plea.

Additionally, Speller fails to demonstrate prejudice. Given the compelling, uncontradicted evidence of his guilt, Speller would have most likely been convicted if he had not pled guilty.[5] *See Meyer*, 506 F.3d at 369. Upon his conviction by the jury, Speller would probably have received a significantly longer sentence, between forty years and life.[6] Thus, Speller fails to demonstrate a reasonable probability that an objective defendant in Speller's position would have rejected the plea agreement and insisted upon taking his chances with the jury. Accordingly, Claim One will be dismissed.

---

[4] Moreover, the Circuit Court found that "[Speller] alone made the decision to plead guilty." *State Habeas Op.* 12. Speller has not introduced any clear and convincing evidence to rebut this finding and thereby demonstrate that the decision to plead guilty was the product of overreaching by counsel, the Circuit Court, or Speller's family.

[5] Speller testified at his sentencing and vaguely suggested that he was not to blame for all of O's and L's medical problems. The quality of Speller's testimony supports the conclusion that counsel acted reasonably by advising Speller to plead guilty. Moreover, given the inadequacies of Speller's testimony, it was clearly reasonable for the Virginia courts to find that Speller had not demonstrated deficiency or prejudice. *See* 28 U.S.C. 2254(d).

[6] Aggravated malicious wounding was a Class 2 felony. *See* Va. Code. 18.2–51.2(A) (West 2008). As such, Speller faced a sentence of between twenty years and life for each charge of aggravated malicious wounding. *Id.* § 18.2-10. At sentencing, the Circuit Court remarked that, but for the plea agreement which capped Speller's sentence, "I think the result would be quite different today." (Sent'g Tr. 111.)

### B. Claim Two

In Claim Two, Speller faults counsel for not objecting and moving to withdraw petitioner's plea on the ground that the Circuit Court's comment that Speller would likely fare better under the terms of the plea agreement than he would by taking his chances with the jury violated Virginia Supreme Court Rule 3A:8. That rule provides, in pertinent part, that the Circuit Court shall not participate in any discussions between the prosecution and the defense with respect to a plea agreement. *See* Va. Sup. Ct. 3A:8(c)(1) (West 2009). The Circuit Court determined that the comment Speller challenges here did not run afoul of Virginia Supreme Court 3A:8. *State Habeas Op.* 15. There was no basis in law or fact for the objection. Therefore, for the reasons more fully stated by the Circuit Court, *id.* at 14–17, Speller fails to demonstrate that counsel performed deficiently. *See Richardson v. Branker*, 668 F.3d 128, 141 (4th Cir. 2012) ("When a claim of ineffective assistance of counsel raised in a habeas corpus petition involves an issue unique to state law, . . . a federal court should be especially deferential to a state post-conviction court's interpretation of its own state's law."). Claim Two will be dismissed.

### IV. CONCLUSION

Respondent's Motion to Dismiss (Dk. No. 5) will be granted. The § 2254 Petition will be denied. The action will be dismissed.

An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). No law or evidence suggests that Speller is entitled to further consideration in this matter. The Court will deny a certificate of appealability.

An appropriate order will accompany this Memorandum Opinion.

                                                                         /s/
                                    HENRY E. HUDSON
Date: Jul 23 2012            UNITED STATES DISTRICT JUDGE
Richmond, Virginia